Argued July 7, affirmed as modified October 25, 1961

# NORTHWESTERN ICE & COLD STORAGE COMPANY *v.* MULTNOMAH COUNTY

365 P. 2d 876

508

Portland, argued the cause for appellant. With him on the briefs was Charles E. Raymond, District Attorney, Portland.

*Stewart M. Whipple,* Portland, argued the cause for respondent. On the brief were Seitz, Easley & Whipple, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin and Lusk, Justices.

PERRY, J.

This action was brought by the plaintiff as an abutting property owner to recover damages for injury caused by a change of grade on S. E. Morrison and S. E. Belmont streets, pursuant to ORS 373.040. The jury returned a verdict for the plaintiff and the defendant appeals.

The record discloses that plaintiff operates a refrigeration and cold storage plant in Block 45 of East Portland, which abuts on S. E. Belmont street, S. E. Morrison street and S. E. First avenue. In 1955 the defendant commenced the construction of a viaduct over Morrison and Belmont streets and pillars were erected on these streets to carry the approach ramps to the viaduct. This work was completed May 24, 1958.

Plaintiff contended that the pillars erected on Belmont street prevented the large refrigerator trucks from using the main entrance on Belmont street and that the pillars on Morrison street would not permit a satisfactory main entrance to be constructed on that street. There is in the record substantial evidence to support these contentions.

The access to the plant having been obstructed on S. E. Belmont and S. E. Morrison streets, plaintiff, in order in some degree to carry on its business, was

required to use an entrance on S. E. First avenue for the servicing, loading and unloading of large trucks and semi-trailers. This entrance formerly was used only for the loading and unloading of railroad cars served by a spur track of the Southern Pacific Company. Also, there were located on S. E. First avenue two mainline tracks of the Southern Pacific Company, and in order to use this means of access to the plant it was necessary for the drivers of the large vehicles to place them across these tracks and then back and jackknife the vehicle to reach a loading dock, which was constructed over and upon the spur track of the Southern Pacific Company. This dock would interfere with the full use of the trackage by the railroad company.

The Southern Pacific Company holds an easement granted it by the city of Portland to operate over and upon S. E. First avenue, this street being only partially improved for vehicular and pedestrian travel, and the railroad demanded the removal of the loading dock upon and over its spur trackage.

■■ The defendant assigns error in the refusal of the trial court to give the following requested instruction:

"I further instruct you that S. E. First Avenue in east Portland between S. E. Morrison Street and S. E. Belmont Street is a public street and thoroughfare and as such may be used by the general public and abutting property owners in travel to and from the premises of the plaintiff, and in this regard, plaintiff is entitled to use the said First Avenue for ingress and egress purposes along the west side of its buildings, and to use said street for the purpose of parking, loading or unloading vehicles."

The defendant contends that, since there was evi-

dence to the effect that the Southern Pacific Company "claimed exclusive right to the use of S. E. First Avenue, it was entitled to have the jury instructed as to plaintiff's legal rights as an abutting property owner."

Our reading of the record does not indicate that the Southern Pacific Company claimed any right to exclude the public or abutting landowners of their due rights in the use of First avenue. But, apart from this, the trial court did, in substance, instruct the jury as requested by the defendant, the court saying:

> "You are instructed that the owners of property facing and abutting on the streets in question have a right to the free and convenient use of and access to and from the streets and have a right to receive light and air from the streets. This right of access is a right to come onto and leave the property by way of the streets. It is often referred to as the right of ingress and egress. Ingress means coming into or entering a piece of property. Egress means leaving or departing from a piece of property. This right of ingress and egress includes the right to have vehicles and trucks come from the street onto plaintiff's property and from the property onto the street * * *."

Where the substance of a requested instruction is given it is not error to deny a requested instruction upon the same issue. *Wills v. Petros,* 225 Or 122, 357 P2d 394; *Hamacher v. Tumy,* 222 Or 341, 352 P2d 493.

Also, the issue sought to be raised by defendant's claim of error is not contained in its requested instruction. If the defendant wished to have the jury instructed as to the respective rights of the abutting landowner and the railroad company so that the jury might be informed as to the respective rights of plaintiff and the railroad company in First avenue, an

instruction setting forth the rights of each should have been requested.

There was no error in the denial of defendant's requested instruction.

■ The defendant assigns as error the trial court's denial of its motion for a new trial. The basis of this assignment of error is newly discovered evidence. The newly discovered evidence consists of ordinances which permit the maintenance of railroad tracks upon S. E. First avenue and which reserved to the city the right to have the railroad company remove its tracks when so ordered by the city.

Motions for new trials based upon claims of newly discovered evidence are not favored. *Newbern v. Exley Produce Express,* 208 Or 622, 303 P2d 231. A fundamental requirement to invoke the court's discretion to grant such a motion is a showing by the moving party that he could not, with reasonable diligence, have discovered and produced this evidence at the trial. ORS 17.610(4). This court carefully pointed out this burden when we stated in *Lewis v. Nichols,* 164 Or 555, 570, 103 P2d 284:

"* * * A presumption confronts the moving party that he failed to exercise due diligence before the trial, it being presumed that he would have discovered the evidence in time to have presented it during the trial had he employed reasonable industry. That presumption is founded upon good sense, for common experience teaches us that since virtually everyone regards a lawsuit as a serious matter, litigants generally discover all available witnesses before the trial. But the disfavor with which a motion for a new trial is regarded is also the product of necessity—the necessity for spurring on the parties to the discovery before trial of all available facts in order that repetitions of the trial may be avoided."

It must have been as apparent to the trial court as it is to this court that to defend this case, in which plaintiff was seeking $425,000 damages and one of its claims for this damage was based upon loss of ingress and egress to its property, all means of meeting this contention should be explored. Since plaintiff was claiming loss of ingress and egress to its property, and a cursory examination of the streets abutting plaintiff's property would have immediately disclosed the presence of the railroad tracks upon the surface of First avenue, this should have led to an immediate inquiry into the respective rights of the railroad company and the plaintiff as to the use of the street.

It is shown by defendant's affidavits that the ordinances were of record and were at all times reasonably available. Failure to seek out available evidence material to a party's cause is not due diligence.

The trial court did not err in denying defendant's motion for a new trial.

■ The defendant's third assignment of error is that the trial court submitted an improper form of verdict.

The verdict permitted the jury to determine the plaintiff's damage and provide statutory interest of 6% from May 24, 1958, the date of injury to plaintiff's property.

Plaintiff's cause of action, which is based upon consequential damages by reason of the change in the street grade, did not exist prior to legislative action, for such consequential damage was not a taking of the property as in condemnation. *Barrett et al. v. Union Bridge Co.,* 117 Or 220, 243 P 93, 45 ALR 521; *Brand v. Multnomah County,* 38 Or 79, 60 P 390, 62 P 209, 50 LRA 389.

The legislature in 1939 passed ORS 373.040, which reads in full as follows:

"(1) If consent is given by the governing body of any city to change any grade of any street as such grade has been established or maintained by the consenting city and pursuant thereto the State Highway Commission or a county changes the grade, the state or the county, whichever makes such change of grade, shall be liable for and shall pay just and reasonable compensation for any damage or injury to any real property abutting upon the road or street affected by the grade change.

"(2) Any person having any right, title or interest in any such real property has a cause of action against the state or against the county to enforce payment of the compensation. Any such action may be commenced and maintained in the circuit court for the county in which the real property is situated. Any party to any such action has the right to appeal from the final judgment of any circuit court to the Supreme Court. Any person having or claiming any right, title or interest in such real property may join as party plaintiff or may intervene in any action involving the real property in which the interest is claimed.

"(3) The trial circuit court shall, in its final judgment, apportion such just compensation as it may award among the various persons found by it to own or have some right, title or interest in such real property. The awarded compensation shall be apportioned according to the rules of law governing the distribution of awards made when real property is taken under the power of eminent domain.

"(4) The liability of the state or the liability of the county, as the case may be, terminates wholly when it pays into court the sums determined by the circuit court to be just compensation. Any cause of action granted by this section is barred unless such action is commenced within six months after the change of grade is physically completed and ac-

cepted by the State Highway Commission or the county. [Amended by 1955 c. 490 § 1]"

The defendant argues, since the damages are unliquidated and only ascertainable after the verdict of the jury, the general rule as to unliquidated damages applies. Therefore, interest from the inception of the damage is improper. The plaintiff argues, since the statute provides for "just compensation," the legislature intended, as in condemnation cases, interest should run from the date of injury.

■ Both parties in their briefs seem to recognize the general rule that, where a statute creates a special liability and no reference is made therein to interest, interest is not recoverable. *United States v. Goltra,* 312 US 203, 61 S Ct 487, 85 L Ed 776.

The plaintiff contends, however, the legislature intended interest should be included in the damages recoverable, because the words "just and reasonable compensation" were used in the statute and "just compensation" for the taking of private property for public use includes interest from the time of the taking. *State Highway Com. v. Stumbo et al.,* 222 Or 62, 352 P2d 478; *State Highway Com. v. Sauers et ux.,* 199 Or 417, 262 P2d 678; *State Highway Com. v. Deal et al.,* 191 Or 661, 233 P2d 242.

The difficulty with this argument of the intention of the lawmakers lies in the fact that the statute was enacted in 1939. Oregon Laws 1939, ch 529, p 1142 § 25. At that time, it would seem interest was not recoverable as a damage for the taking of private property for a public use. *State v. Mohler et al.,* 115 Or 562, 237 P2d 690, 239 P2d 193. It was not until *State v. Mohler,* supra, was expressly overruled by this court in *State Highway Commission v. Deal,* supra,

that interest from the date of taking was allowed as a matter of right as a part of the damages for a public taking of private property.

The inference, then, would be, since at the time of passage of ORS 373.040 interest was not a damage from the date of taking, that interest was not to be allowable under a special statute passed simply to relieve a hardship formerly noncompensable.

Another difficulty to construing "just and reasonable compensation" in a statute to mean the same as "just compensation" in the Federal and our state constitutions, is that separate policy matters which are ingrained in the law will not permit such interpretation unless clearly required by the statute.

■ The people, in their sovereign right, by enactment of constitutions place beyond the power of their representative government any right to limit full compensation to a private party whose property was to be taken for public use by the power of condemnation. *Chapman v. Hood River,* 100 Or 43, 196 P 467.

On the other hand, the people did not impose upon themselves by constitutional fiat the burden of paying interest upon the debts the state itself might create. This is left to legislative expression. See Ann. 24 ALR 2d 928, § 16.

■ In *Seton v. Hoyt,* 34 Or 266, 272, 43 LRA 634, 55 P 967, the court, quoting with approval from *United States v. North Carolina,* 136 US 211, 10 S Ct 920, said:

"'Interest, when not stipulated for by contract, or authorized by statute, is allowed by the courts as damages for the detention of money, or of property, or of compensation, to which the plaintiff is entitled; and, as has been settled upon grounds of public convenience, is not to be awarded against

a sovereign government, unless its consent to pay interest has been manifested by an act of the legislature, or by a lawful contract of the executive officers.' The rule applies as well to a sovereign state as to the national government."

A county being an arm of the state falls within the same rule. *Seton v. Hoyt,* supra.

There are, of course, some exceptions where the courts have held interest is recoverable against the state under the particular facts of the case. These decisions rest upon the wrongful detention of moneys due which, although unliquidated, are reasonably "ascertainable by simple computation." *Public Market Co. v. Portland,* 171 Or 522, 130 P2d 624, 138 P2d 916.

■ There can be no doubt that ORS 373.040 was passed as a special act to grant an abutting landowner relief for the consequential damage he was compelled to suffer without compensation because his land was not taken from him as in condemnation. The injury he suffers is not the loss of the property itself, but the loss of the use as advantageously as before the change of grade, which may in many instances be as severe as the taking of the property itself.

However, we are unable to find in the Act a clear expression manifesting an intention by the legislature to waive its immunity as to interest on its debts.

■ The plaintiff also relies upon the decisions of a number of states which do allow interest as in condemnation cases from a particular date. Most of these decisions are found in the annotated cases set forth in 96 ALR 206 and 36 ALR2d 471. In the latter annotation the author states, § 59:

"As stated in the original annotation in the majority of the jurisdictions the viewpoint has been taken that interest, or an allowance of damages

> measured by interest, will be allowed as part of the damages sustained by a property owner by the change in the grade of a street or road."

We will not attempt to analyze each of the cases and unduly extend this opinion, for each case supporting the rule relies upon entirely different statutes or constitutional provisions from those governing in this state.

The first case cited to sustain that proposition is *New Haven Steam Saw Mill Co. v. New Haven et al.*, 72 Conn 276, 286, 287, 44 A 229, 44 A 609, where the court says:

> "* * * The committee of the Superior Court has found that the damages to the plaintiffs largely exceed the benefits to them. We think the defendants are by the statute made liable to pay the amount of the damages so ascertained.
>
> "The Superior Court is advised to accept the reports of its committee * * *.
>
> "* * * * *
>
> "* * * Upon consideration of the present motion, we are of the opinion that no allowance should be made in the nature of interest from any date prior to that of the filing of the committee's report.
>
> "At that date, however, the damage which the plaintiffs have suffered was definitely ascertained. The delays which have followed are not attributable to their fault. To give them just compensation for the injury which has been occasioned to them for the public good, it is necessary to make them an allowance in the nature of *interest from the period when their damages were liquidated* to that when they are put into formal judgment." [Emphasis added.]

The only conclusion to be drawn from reading this case is that it is not at all contrary to the position we have taken. The fact that under Connecticut stat-

ute the damages are liquidated before judgment is not important. The result is the same—interest is not to be allowed prior to liquidation of the principal damages. In Oregon such liquidation does not occur until judgment.

A case cited in the annotation as supporting the majority rule, and relied upon by plaintiff, is *Chamberlain v. City of Des Moines,* 172 Iowa 500, 502, 154 NW 766, where the court says:

"At common law, the general rule, no doubt, is that interest should not be allowed on unliquidated damages until the amount of the damage is ascertained; because, before that date, the amount of the award is uncertain and unfixed. [Citing cases.] But many exceptions have been made to this rule, * * *.

"Much depends upon the nature of the liability and upon the defendant's duty in the premises. Here the statutes made it the duty of defendant, before commencing the work of changing the grade, *to have the damages assessed and to pay or tender them to the proper owner.* Code Sec. 785. Had this been done, plaintiff would have had his money which was his due before the damages were done. He did not get it because the city failed and neglected to follow the statutes. As a result, the city has not only had the benefit of the change of grade, but also the use of the money which it should have paid to the plaintiff before it commenced the work. In such circumstances, we think interest should be allowed *eo nomine.* * * * [Emphasis supplied.]
"* * * * *

"It is true that the statute which authorizes recovery of damages for change of grade does not provide that interest may be allowed. But it does provide for payment in advance of the change, thus creating a liability as of that date; and if the city does not pay or tender the money in advance of the change, interest is necessary to make the

injured party whole, and, under the general statute allowing interest on sums due, we think interest should be allowed."

The distinction between this case and the matter before us is quite obvious. The Iowa statute requires that the damages be ascertained and paid before the change of grade is commenced. The liability exists from that date—the money is due and interest runs. The substance of the rule of willful withholding is by reason of the statute applied.

Another case relied upon by plaintiff is *Hampton v. Kansas City,* 74 Mo App 129, 131. The plaintiff brought his case under Article II, section 21, of the Missouri Constitution, which provides that "Private property shall not be *taken or damaged* for public use without just compensation." [Emphasis added.] Under the constitutional provision in Missouri consequential damages to property as well as an actual taking fall within the rules of condemnation.

The New York case cited by plaintiff, *Hollman v. State,* 13 NYS2d 857, 171 M 768, is based upon a New York statute expressly providing for interest in change of grade cases.

In *Cincinnati v. Whetstone,* 47 Ohio St 196, 203, 24 NE 409, another case cited in the annotation and relied upon by plaintiff, we read:

"* * * 'Where compensation is to be made for property, *and delay has occurred* in obtaining payment, interest is a recognized element in assessing the value.' White J., in Gest v. Cincinnati, 26 Ohio St. 280. [Emphasis added] For damage to the abutting property, by reason of the street improvement, the property owners were entitled to full compensation, which should have been promptly made; and if there was not a prompt reparation, it was proper as an additional means of making the

owners whole, to instruct the jury to award interest on the compensation while withheld. The injury for which full compensation was due, is referable to the time of the change of the grade in 1872 and 1873; and the interest in controversy represents what the property owners might have received, for the use of the compensation allowed, had the same been paid without delay."

The reason for this decision, again, is the same as in the Iowa case. The statute requires payment of damages before the change of grade takes place. Our statute does not.

While it was error for the trial court to submit to the jury the issue of interest from the date of injury, the jury did determine the loss to the property by the change of grade. By virtue of Article VII, § 3, of the Oregon Constitution, it is not necessary that the cause be remanded for a new trial. The verdict is severable and that portion allowing interest from the date of injury will be deducted. *In re McKinney's Estate,* 175 Or 28, 149 P2d 980, 151 P2d 459; *Richardson v. Investment Co.,* 124 Or 569, 264 P 458, 265 P 1117.

The judgment is affirmed as modified.